**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

**CASE NO:**

OZGUR OZKAN,

     Plaintiff,

     v.

KANTI GROUP, INC., PUB 52 SPORTS BAR
& KITCHEN, LLC, and RAJIV PANDEY,
individually,

     Defendants.

_____/

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

     Plaintiff, OZGUR OZKAN ("Plaintiff"), files the following Complaint for Damages and Demand for Jury Trial against Defendants, KANTI GROUP, INC. ("KANTI"), PUB 52 SPORTS BAR & KITCHEN, LLC ("PUB 52"), and RAJIV PANDEY ("PANDEY"), individually, (KANTI, PUB 52, and PANDEY, collectively referred to herein after as "Defendants"), and alleges as follows:

**INTRODUCTION**

     1.     Plaintiff is a Turkish chef who was lured to come work for Defendants in the United States under false pretenses. In 2019, Defendants recruited Plaintiff to work at Pub 52 - a South Florida restaurant based in Miami - with the promise that they would sponsor Plaintiff's visa application and provide a guaranteed annual salary. Defendants ultimately took advantage of Plaintiff by requiring him to work for a substantial period of time without compensation, thus committing a series of state and federal minimum wage and overtime violations pursuant to Fair Labor Standards Act, 29 U.S.C. §§ 201 et. seq ("FLSA") and Florida Minimum Wage Act, Fla.

Stat. 448.110 ("FMWA"). Defendants further violated the Trafficking Victims Protection Reauthorization Act, 18. U.S.C § 1589 et. seq ("TVPRA") by threatening to terminate Plaintiff's employment and visa status unless he would work for sub-minimum wages and otherwise capitulate to these unlawful and barbaric policies. Plaintiff's employment ultimately ended when he insisted that he be compensated overtime compensation for the hours he worked in 2019. Defendants terminated Plaintiff in direct response to this request for overtime wages and proceeded to revoke Plaintiff's work visa under false pretenses.

**PARTIES**

2.     During all times material hereto, Plaintiff was a resident of Miami-Dade County, Florida, over the age of 18 years, and otherwise *sui juris*.

3.     Defendants collectively operate multiple restaurants in the South Florida area and have done so during all times relevant to this dispute.

4.     During all times material hereto, Defendant, KANTI, was a Florida for Profit Corporation operating its business at 2440 W. State Road 84, Fort Lauderdale, FL 33312, and licensed to transact business in Florida within the jurisdiction of this Honorable Court.

5.     Defendant, KANTI, owns and/or operates multiple restaurants in South Florida.

6.     During all times material hereto, Defendant, PUB 52, was a Florida Limited Liability Company operating its business at 5829 SW 73rd Street, South Miami, FL 33143, and licensed to transact business in Florida within the jurisdiction of this Honorable Court.

7.     Upon information and belief, at all times material hereto, Defendant, PANDEY, was a resident of Broward County, Florida, over the age of 18 years, and otherwise *sui juris*.

8.     During all times material hereto, Defendant, PANDEY, was the corporate officer, owner and operator of KANTI, and PUB 52.

9.     During all times material hereto, Defendant, KANTI, was Plaintiff's employer, as defined by 29 U.S.C. § 203(d).

10.     During all times material hereto, Defendant, PUB 52, was Plaintiff's employer, as defined by 29 U.S.C. § 203(d).

11.     During all times material hereto, Defendant, PANDEY, was Plaintiff's employer, as defined by 29 U.S.C. § 203(d).

12.     During all times material hereto, Defendants were Plaintiff's joint employer, as defined by 29 U.S.C. § 203(d) and applicable regulations.

13.     During all times material hereto, Defendants were jointly and collectively vested with decision-making authority over the hiring, firing, scheduling, day-to-day operations, and pay practices that led to the FLSA and FMWA violations alleged herein.

## JURISDICTION AND VENUE

14.     A substantial amount of the acts and/or omissions giving rise to this dispute took place within Broward County, Florida, which falls within the jurisdiction of this Honorable Court.

15.     Defendant, KANTI, regularly transacts business in Broward County, Florida, and operates its principal location out of Broward County, Florida, and jurisdiction is therefore proper within the Southern District of Florida pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337.

16.     Defendant, PUB 52, regularly transacts business in South Florida, and operates its principal location in South Florida, and jurisdiction is therefore proper within the Southern District of Florida pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337.

17.     Venue is also proper within the Southern District of Florida pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1391(b).

18.     All conditions precedent to filing this Action have been satisfied.

## FLSA & FMWA COVERAGE

19.     Defendant, KANTI is covered under the FLSA and FMWA through enterprise coverage, as KANTI was engaged in interstate commerce during all pertinent times in which Plaintiff was employed.  More specifically, KANTI's business and Plaintiff's work for KANTI affected interstate commerce because the goods and materials that Plaintiff and other employees used and/or handled on a constant and/or continuous basis moved through interstate commerce prior to or subsequent to Plaintiff's use of the same.  Accordingly, KANTI was engaged in interstate commerce pursuant to 29 U.S.C. § 203(s)(1).

20.     During his employment with Defendant, KANTI, Plaintiff, and multiple other employees, handled and worked with various good and/or materials that have moved through interstate commerce, including, but not limited to the following: napkins, silverware, appliances, liquor, beer, food items, credit cards, debit cards, restaurant equipment, pens, chairs, tables, vacuum cleaners, steaks, seafood, burgers, park, bacon, jalapeños, onions, pickles, cucumber, mustard, ketchup, paprika, salt, pepper, garlic, lettuce, carrots, cucumbers, chicken, televisions, remote controls, menus, etc.

21.     Defendant, KANTI, regularly employed two (2) or more employees for the relevant time period, and these employees handled goods or materials similar to those goods and materials handled by Plaintiff, thus making KANTI's business an enterprise covered by the FLSA and FMWA.

22.     At all material times (during the last five years), KANTI had annual gross revenue in excess of $500,000.00 in 2017, 2018, 2019, 2020, 2021, and is expected to gross in excess of $500,000.00 in 2022.

23.     During all material times hereto, Plaintiff was a non-exempt employee of KANTI within the meaning of the FLSA and FMWA.

24.     Defendant, PUB 52, is covered under the FLSA and FMWA through enterprise coverage, as PUB 52 was engaged in interstate commerce during all pertinent times in which Plaintiff was employed.  More specifically, PUB 52's business and Plaintiff's work for PUB 52 affected interstate commerce because the goods and materials that Plaintiff and other employees used and/or handled on a constant and/or continuous basis moved through interstate commerce prior to or subsequent to Plaintiff's use of the same.  Accordingly, as PUB 52 was engaged in interstate commerce pursuant to 29 U.S.C. § 203(s)(1).

25.     During his employment with Defendant, PUB 52, Plaintiff, and multiple other employees, handled and worked with various good and/or materials that have moved through interstate commerce, including, but not limited to the following: napkins, silverware, appliances, liquor, beer, food items, credit cards, debit cards, restaurant equipment, pens, chairs, tables, vacuum cleaners, steaks, seafood, burgers, park, bacon, jalapeños, onions, pickles, cucumber, mustard, ketchup, paprika, salt, pepper, garlic, lettuce, carrots, cucumbers, chicken, televisions, remote controls, menus, etc.

26.     Defendant, PUB 52, regularly employed two (2) or more employees for the relevant time period, and these employees handled goods or materials similar to those goods and materials handled by Plaintiff, thus making PUB 52's business an enterprise covered by the FLSA and FMWA.

27.     At all material times (during the last five years), Defendant, PUB 52, had annual gross revenue in excess of $500,000.00 in 2017, 2018, 2019, 2020, 2021, and is expected to gross in excess of $500,000.00 in 2022.

28.     During all material times hereto, Plaintiff was a non-exempt employee of Defendant, PUB 52, within the meaning of the FLSA and FMWA.

**JOINT ENTERPRISE COVERAGE**

29.     Defendants all hired Plaintiff and supervised the conditions of his employment on a regular and recurrent basis.

30.     Defendant, PANDEY, is the President and CEO of Defendant KANTI, and controls the operations of all of the corporate Defendants named in this lawsuit.

31.     Defendant, KANTI, is listed on the Florida Secretary of State website as the sole Managing Member of Defendant PUB 52.

32.     Defendant, PANDEY, signed the annual reports of each Defendants KANTI and PUB 52 under the "signing officer/director detail" electronic signature line on sunbiz.org.

33.     Defendants, KANTI, and PUB 52, perform related activities in that they both operate and/or manage sports bars and restaurants and compensate each other's employees.

34.     Upon information and belief, Defendant, KANTI, exerts significant influence and/or control over the employment, payroll, time keeping, employee schedules and operational decisions made by Defendant PUB 52.

35.     Defendants operate together for a common business purpose through unified operation and/or common control.

36.     In furtherance of their common business purpose, Defendants each contributed valuable resources that were necessary to service their common clients and customers.

37.     Defendants are each other's alter-egos and should be treated as the same corporate entity for the purposes of this lawsuit.

38.     During all times material hereto, Defendants intermingled resources, including but not limited to employees and money. For example, Plaintiff received (but was instructed to not cash) paychecks from all of the corporate Defendants named in this lawsuit.

39.     Defendant, KANTI, was Plaintiff's immigration sponsor and purported to be Plaintiff's employer within documents submitted to the federal government, which in turn, were intended to be used for the benefit of all Defendants.

40.     Defendant, PUB 52, issued payment to Plaintiff during the relevant time period (although Defendants prohibited Plaintiff from cashing or otherwise depositing this money during certain workweeks).

41.     Defendants, collectively, grossed in excess of $500,000.00 annually in 2017, 2018, 2019, 2020, 2021, and are expected to do so in 2022.

## PLAINTIFF'S WORK FOR DEFENDANTS AND GENERAL ALLEGATIONS

42.     Defendants induced Plaintiff to move from Turkey to the United States in 2019 so that he would work for them as a chef with false promises about the nature of his employment, wages, benefits, and legal immigration status.

43.     During the relevant time period, Defendants failed to maintain appropriate immigration documents concerning the employment status for Plaintiff, improperly threatened legal action or consequences against Plaintiff unless he would work for sub-minimum wages, and otherwise acted in a coercive and threatening manner against Plaintiff in order to compel him to work for a sub-minimum wage and forego receipt of overtime wages for the long hours he worked.

44.     Defendant, PANDEY, first recruited and induced Plaintiff to work for Defendants in January 2019 at the Pub 52 restaurant and bar in Miami, Florida, which required Plaintiff to move from Turkey to the United States.

45.     Defendants entered into a contract with Plaintiff in January 2019, the terms of which required Plaintiff to perform work for Defendants as an executive chef for a period of at least three (3) years.

46.     As a material term of the employment agreement, Defendants agreed to pay Plaintiff $45,000.00 a year in exchange for him to move to the United States and work for them.

47.     Moreover, as part of the consideration for this agreement, Defendants offered to sponsor Plaintiff for an immigration visa so that he could legally work for them in South Florida within the United States.

48.     Plaintiff moved to the United States in January 2019 in reliance on Defendants' representation that they would sponsor Plaintiff's immigration visa in the United States and pay him $45,000 per year. In doing so, Plaintiff relocated his entire family to South Florida, with the mutual expectation that the work visa application would be submitted upon his arrival to South Florida.

49.     However, Defendants did not timely submit the necessary documentation for Plaintiff's immigration visa until May 2019.

50.     Defendants nevertheless forced Plaintiff to start performing work for their benefit as soon as he arrived to South Florida in January 2019 before he ever received a work visa.

51.     Defendant, PANDEY, verbally threatened Plaintiff that he would pull his sponsorship of Plaintiff's immigration and visa applications unless Plaintiff began working at Pub 52 immediately in January 2019, even though Plaintiff was not legally permitted to work in the United States.

52.     During this employment period, Plaintiff worked an average of approximately fifty (50) hours per week for Defendants.

53. During this employment period, instead of the $45,000.00 they had promised to pay Plaintiff, the Defendants unilaterally elected to arbitrarily compensate Plaintiff a rate of $12.00 per hour.

54. Defendants kept and maintained the number of hours Plaintiff worked each week during this time period even though Defendants should not have required Plaintiff to work without proper documentation and authorization.

55. Defendant, PANDEY, provided Plaintiff with checks on a bi-weekly basis that were issued from Defendant, PUB 52.

56. However, Defendant, PANDEY, specifically instructed Plaintiff to not cash *any* of these checks until his work visa was approved and issued.

57. Defendant, PANDEY, told Plaintiff that he would terminate Plaintiff and expedite Plaintiff's deportation if Plaintiff cashed any of the paychecks before his green card application and immigration status was approved.

58. Meanwhile, Defendant, PANDEY, consistently delayed the submission of Plaintiff's visa application so that Plaintiff would be required to continue working without compensation.

59. Defendants eventually memorialized and acknowledged their offer to employ Plaintiff for $45,000 annually for a period of 3 years through a "Written Confirmation of Agreement" which was signed by Plaintiff, and Defendant, PANDEY, on behalf of KANTI. *See* Written Confirmation of Agreement attached hereto as **Exhibit A**.

60. The "Written Confirmation of Agreement" was dated May 29, 2019, and is written by Defendant, PANDEY, on Defendant, KANTI's letterhead.

61.     Defendant, KANTI, submitted to the United States Citizenship and Immigration Services ("USCIS") a letter in support of an O-1 nonimmigrant visa petition on behalf of Plaintiff ("O-1 Visa Petition"). *See* O-1 Visa Petition attached hereto as **Exhibit B**.

62.     The O-1 Visa Petition for Plaintiff was dated May 28, 2019.

63.     The O-1 Visa Petition is authored by Defendant, PANDEY, and provides details as to Plaintiff's qualifications and notoriety as a respected chef.

64.     The O-1 Visa Petition has contained supporting documentation provided by Defendant, PANDEY, for USCIS to consider in evaluating the petition.

65.     Defendant, PANDEY, however, waited until in or around June 2019 to submit Plaintiff's immigration and visa documentation to the appropriate authorities.

66.     Plaintiff's visa application was not approved until on or about November 25, 2019, approximately 11 months after he first started working for Defendants.

67.     Accordingly, under the threat of termination and immediate deportation, Plaintiff worked for Defendants **without compensation** from January 2019 through November 25, 2019.[1]

68.     Because Defendants threatened and coerced Plaintiff to not deposit his checks before his work visa application was approved, Plaintiff was required to live off his life's savings during this time period, in order to provide for his family, and, in any event, was not allowed to receive wages free-and-clear from any encumbrance imposed by Defendants.

---

[1] Certain records kept and maintained by the Defendants demonstrate that Plaintiff worked during this time period. While payroll records indicate that Plaintiff was provided certain paychecks during this time period he was instructed by Defendant, PANDEY, to not cash any of the checks, and Defendants therefore failed to compensate Plaintiff a wage that was "free-and-clear" from any encumbrance.

69.     Once Plaintiff was legally authorized to work in the United States at the end of November 2019, Defendant PANDEY, forced Plaintiff to return all of the paychecks that were previously issued to Plaintiff, and which Plaintiff had been instructed to not cash.

70.     Defendant, PANDEY, threatened to revoke Defendants' immigration sponsorship and terminate Plaintiff's employment unless Plaintiff returned the paychecks immediately.

71.     Plaintiff reasonably believed that he had no other choice but to comply with Defendant, PANDEY's demands and returned the paychecks that he had received and not deposited from January 2019 through the end of November 2019.

72.     Prior to surrendering these paychecks to Defendant, PANDEY, Plaintiff photographed the paychecks to document their existence.

73.     Defendants violated the Florida Constitution's minimum wage requirements by not paying Plaintiff at least Florida's applicable minimum wage for hours worked during Plaintiff's employment period from January 2019 through November 2019.

74.     Plaintiff is entitled to receive at least Florida's minimum wage free and clear of any encumbrance for each hour worked during the relevant time period.

75.     In 2019, the Florida Minimum Wage was $8.46 per hour.

76.     Plaintiff has complied with pre-suit notice, and all other conditions precedent to this action have been performed or waived, by sending Defendants a pre-suit minimum wage demand letter required by Florida law.

77.     More than fifteen (15) days have passed since Defendants received such written pre-suit notice and no payment has been tendered by Defendants to compensate Plaintiff for the Florida minimum wages owed during this time period.

78.     Defendant, PANDEY, made several false statements to Plaintiff related to Plaintiff's compensation structure, immigration sponsorship, and work schedule in order to lure Plaintiff to accept employment with Defendants.

79.     Defendants, PANDEY, and KANTI, specifically promised that they would employ Plaintiff for a period of at least three (3) years, pay him $45,000 a year, and sponsor his immigration application to work in the United States.

80.     This agreement was eventually memorialized in writing and submitted to the federal government in support of Plaintiff's visa application.

81.     Plaintiff detrimentally relied upon these false statements made by Defendants, PANDEY, and KANTI, when he accepted Defendants' offer of employment and relocated his family from Turkey to South Florida.

82.     Defendants, PANDEY, and KANTI made these statements concerning the annual salary to Plaintiff knowing they were false and were recklessly indifferent as to any consequences of their actions.

83.     During this time period, Defendants proceeded to only compensate Plaintiff at a rate of $12.00 per hour but refused to allow Plaintiff to actually cash any of his paychecks without recourse including termination and immediate revocation of the application for his work visa.

84.     Defendants, PANDEY, and KANTI, induced Plaintiff to immigrate to the United States and threatened to deport Plaintiff if Plaintiff would not work for sub-minimum wages.

85.     Defendant, PANDEY, also threatened Plaintiff that he would revoke Plaintiff's immigration sponsorship and terminate his employment if Plaintiff refused to work or otherwise cashed the paychecks he was issued.

86.     Throughout Plaintiff's employment period, Plaintiff frequently requested Defendants to pay him properly.

87.     Defendants continuously refused to pay Plaintiff federal and state minimum wages and federal overtime wages.

88.     In June 2020, during the middle of the Covid-19 global pandemic, Plaintiff complained to Defendant, PANDEY, that he was still owed unpaid overtime wages for 2019 and 2020 because he was working more than 40 hours in a week.

89.     That same month, June 2020, after Plaintiff made this request for payment of the overtime wages he was owed the Defendants fired Plaintiff and revoked their visa sponsorship of Plaintiff.

## COUNT I – FEDERAL MINIMUM WAGE VIOLATIONS - 29 U.S.C. § 206
### (Against All Defendants)

90.     Plaintiff hereby re-alleges and re-avers Paragraphs 1 through 89 as though set forth fully herein.

91.     Plaintiff alleges this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et. seq.

92.     At all times relevant to this action, Plaintiff was an employee of the Defendants within the meaning of the FLSA.

93.     Defendants failed to pay Plaintiff at least the applicable federal minimum wage for each hour worked between January and November 2019.

94.     Defendants knew or should have known of the requirements under the FLSA but intentionally and/or willfully failed to comply with same and are therefore subject to liquidated damages.

95.     Plaintiff seeks recovery of damages as referenced above and further seeks liquidated damages, interest, costs, and attorneys' fees pursuant to 29 U.S.C. 216(b).

WHEREFORE, Plaintiff, OZGUR OZKAN, respectfully requests that this Honorable Court enter judgment in his favor and against Defendants, KANTI GROUP, INC., PUB 52 SPORTS BAR & KITCHEN, LLC, and RAJIV PANDEY, and award Plaintiff: (a) unliquidated damages to be paid by the Defendants, jointly and severally; (b) liquidated damages to be paid by the Defendants, jointly and severally; (c) all reasonable attorney's fees and litigation costs as permitted under the FLSA to be paid by the Defendant, jointly and severally; and any and all such further relief as this Court may deem just and equitable under the circumstances.

## COUNT II – FLORIDA MINIMUM WAGE VIOLATIONS – FLA. STAT. § 448.110
### (Against All Defendants)

96.     Plaintiff hereby re-alleges and re-avers Paragraphs 1 through 89 as though set forth fully herein.

97.     Plaintiff alleges this action pursuant to Florida's Minimum Wage Act ("FMWA"), Fla. Stat § 448.110.

98.     In 2019 the Florida minimum wage was $8.46 per hour.

99.     Plaintiff's regular hourly rate of pay amounted to less than the Florida required minimum wage rates from January 2019 through November 2019.

100.     Defendants knew or should have known of the requirements under the FMWA but intentionally and/or willfully failed to comply with same and are therefore subject to liquidated damages.

101.     As a result of the violations alleged herein, Plaintiff was required to retain the undersigned and is therefore entitled to recover reasonable attorneys' fees and costs.

WHEREFORE, Plaintiff, OZGUR OZKAN, respectfully request that this Honorable Court enter judgment in his favor and against Defendants, KANTI GROUP, INC., PUB 52 SPORTS BAR & KITCHEN, LLC, and RAJIV PANDEY, and award Plaintiff: (a) double unpaid Florida minimum wages as provided by the Fla. Stat. 448.110, to be paid by the Defendants, jointly and severally; (b) all reasonable attorney's fees and litigation costs as permitted under Fla. Stat. § 448.110 and/or Fla. Stat. § 448.08, to be paid by Defendants, jointly and severally; and any and all such further relief as this Court may deem just and equitable under the circumstances.

### COUNT III – FEDERAL OVERTIME WAGE VIOLATIONS – 29 U.S.C. § 207
**(Against All Defendants)**

102.   Plaintiff hereby re-alleges and re-avers Paragraphs 1 through 89 as though set forth fully herein.

103.   Plaintiff alleges this action pursuant to the FLSA, 29 U.S.C. § 216(b).

104.   During all times material hereto, Plaintiff was a non-exempt employee who was eligible for overtime wages when he worked in excess of forty (40) hours per week.

105.   During the time period relevant to this lawsuit, during one or more workweeks, Plaintiff worked in excess of forty (40) hours in a workweek.

106.   However, during one or more workweeks, Defendants failed to compensate Plaintiff at the proper overtime rate required by the FLSA for certain hours worked in excess of forty (40) per week.

107.   Defendants willfully and intentionally refused to pay Plaintiff's overtime wages as required by the FLSA, as Defendants knew of the overtime requirements of the FLSA.

108.   Defendants recklessly failed to investigate whether Defendants' payroll practices were in accordance with the FLSA during the relevant time period.

109.    Defendants' willful and/or intentional violations of federal wage law entitle Plaintiff to an additional amount of liquidated, or double, damages.

110.    As a direct and proximate result of Defendants' conduct, Plaintiff has been damaged in an amount to be proven at trial, including, but not limited to, a sum equivalent to the unpaid overtime compensation as required by 29 U.S.C. § 216(b) and any such further damages as may be shown at the time of trial.

111.    As a result of the violations alleged herein, Plaintiff was required to retain the undersigned counsel and is therefore entitled to recover reasonable attorney's fees and costs under the FLSA.

WHEREFORE, Plaintiff, OZGUR OZKAN, respectfully requests that this Honorable Court enter judgment in his favor and against Defendants, KANTI GROUP, INC., PUB 52 SPORTS BAR & KITCHEN, LLC, and RAJIV PANDEY, and award Plaintiff: (a) unliquidated damages to be paid by the Defendants, jointly and severally; (b) liquidated damages to be paid by the Defendants, jointly and severally; (c) all reasonable attorney's fees and litigation costs as permitted under the FLSA to be paid by the Defendant, jointly and severally; and any and all such further relief as this Court may deem just and equitable under the circumstances.

### COUNT IV – UNJUST ENRICHMENT
**(as an Alternative to Counts I, II, and III)**
**(against KANTI)**

112.    Plaintiff hereby re-alleges and re-avers Paragraphs 1 through 89 as though set forth fully herein.

113.    In the alterative to Plaintiff's claims under the FLSA, Plaintiff seeks damages based on unjust enrichment.

114.     Defendant, KANTI, agreed to pay Plaintiff for the work he performed for Defendants during all times relevant to this action.

115.     Defendant, KANTI, has not paid Plaintiff, or allowed Plaintiff to tender negotiable instruments for all of the money it agreed to pay him.

116.     Plaintiff conferred a benefit on Defendant, KANTI, during the relevant time period, for which Defendant, KANTI appreciated, accepted and retained.

117.     Under the circumstances, Defendant, KANTI, has been unjustly enriched, Plaintiff has suffered damages, and it would be inequitable for Defendant, KANTI to retain the benefit Plaintiff conferred on them.

WHEREFORE, Plaintiff, OZGAR OZKAN, respectfully requests that this Honorable Court enter judgment in his favor and against Defendant, KANTI GROUP, INC., and award Plaintiff: (a) damages for unjust enrichment; (b) reasonable attorneys' fees and litigation costs pursuant to Fla. Stat. § 448.08; and any and all such further relief as this Court deems just, equitable, and proper under the circumstances.

### COUNT V - FLORIDA COMMON LAW BREACH OF CONTRACT
(as an Alternative to Counts I, II, III, and IV)
(against KANTI)

118.     Plaintiff re-alleges and reincorporates by reference the allegations contained in paragraphs 1 through 89 as though fully set forth herein.

119.     In the alternative to Plaintiff's claim for damages under the FLSA, FMWA, and unjust enrichment, Plaintiff seeks damages against Defendant, KANTI, for breach of contract.

120.     Defendant, KANTI, offered, and Plaintiff accepted, to sponsor Plaintiff for an immigration visa in the United States and to pay Plaintiff forty-five thousand dollars ($45,000.00) per year in exchange for Plaintiff's labor for a period of at least three (3) years.

121.     Plaintiff advanced consideration for the promises set out in the "Written Confirmation of Agreement" by leaving his work and family in Turkey and moving to the United States to work for Defendant, KANTI.

122.     Plaintiff surrendered other employment opportunities, incurred other financial losses in reasonable reliance of KANTI's offer and performed work based on their agreement.

123.     KANTI breached this contract in that it did not pay Plaintiff forty-five thousand dollars ($45,000.00) per year for the work he performed in 2019 or 2020.

124.     Plaintiff suffered and continues to suffer economic damages as a direct result of KANTI's breach.

125.     Plaintiff has performed all obligations under the contract.

WHEREFORE, Plaintiff, OZGAR OZKAN, respectfully requests that this Honorable Court enter judgment in his favor and against Defendant, KANTI GROUP, INC. and award Plaintiff: (a) compensatory damages; (b) reasonable attorney's fees and costs; and any and all such further relief as may be deemed just and reasonable under the circumstances.

<u>**COUNT VI – PROMISSORY ESTOPPEL**</u>
**(as an Alternative to Counts I, II, III, IV, and V)**
**(against KANTI)**

126.     Plaintiff re-alleges and reincorporates by reference the allegations contained in paragraphs 1 through 89 as though fully set forth herein.

127.     In the alternative to Plaintiff's claim for damages under the FLSA, FMWA, unjust enrichment, and breach of contract, Plaintiff seeks damages against Defendant, KANTI, under a theory of promissory estoppel.

128.    Defendant, KANTI, promised, and Plaintiff accepted, to sponsor Plaintiff for an immigration visa in the United States and to pay Plaintiff forty-five thousand dollars ($45,000.00) per year in exchange for Plaintiff's labor for a period of three (3) years.

129.    Plaintiff reasonably relied upon these promises as they were set forth in the "Written Confirmation of Agreement" that KANTI submitted to the immigration office.

130.    Plaintiff moved himself and his family from Turkey to the United States and surrendered other employment opportunities, incurred other financial losses in reasonable reliance of KANTI's offer and performed work based on their agreement.

131.    Defendant, KANTI, should reasonably have expected its promise to induce action from Plaintiff, and did, in fact, induce action from Plaintiff.

132.    Plaintiff suffered and continues to suffer economic damages as a direct result of KANTI's failure to follow through on its promise to compensate Plaintiff at least forty-five thousand dollars ($45,000.00) per year.

WHEREFORE, Plaintiff, OZGAR OZKAN, respectfully requests that this Honorable Court enter judgment in his favor and against Defendant, KANTI GROUP, INC. and award Plaintiff: (a) compensatory damages; (b) reasonable attorney's fees and costs; and any and all such further relief as may be deemed just and reasonable under the circumstances

### COUNT VII - VIOLATION OF THE TRAFFICKING VICTIMS PROTECTION REAUTHORIZATION ACT - 18 U.S.C. § 1589(2)
### (against KANTI & PANDEY)

133.    Plaintiff hereby re-alleges and re-avers Paragraphs 1 through 89 as though set forth fully herein.

134.    Defendants, KANTI, and PANDEY, violated the Trafficking Victims Protection Reauthorization Act ("TVPRA") 18 U.S.C. § 1589(2) by knowingly attempting to obtain labor

and services of Plaintiff using a scheme, plan or pattern, which in the totality of the circumstances, was intended to coerce Plaintiff to believe he would suffer serious harm if he were to leave the employ of Defendants.

135.   As a consequence of the Defendants' scheme and actions, Plaintiff was isolated within Defendants' restaurant and forced to work in conditions causing psychological and monetary harm.

136.   Immigration Visa Sponsorship, wages and employment opportunities were withheld at various times during Plaintiff's employment period with Defendants.

137.   Defendants violated 18 U.S.C. § 1589(3) by knowingly providing and obtaining the labor and employment of Plaintiff by means of threatened abuse of the law or legal process.

138.   Defendants threatened Plaintiff with termination, deportation and/or loss of legal status as a means of Plaintiff's employment for a sub-minimum wage which constitutes an abuse of the legal process under 18 U.S.C. § 1589(3).

139.   Plaintiff is authorized to bring these civil claims against the Defendants pursuant to the civil remedies provision of the TVPRA 18 U.S.C. § 1595.

140.   Plaintiff suffered injury as a proximate result of Defendants' actions.

141.   Plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

142.   Defendants violated 18 U.S.C. § 1590 by knowingly recruiting, transporting, and obtaining Plaintiff for labor and services in violation of the TVPRA.

143.   Defendants knowingly and willfully held Plaintiff in involuntary servitude by threatening to withdraw sponsorship of his immigration visa, by threatening Plaintiff with termination unless he worked without pay and by forcing Plaintiff to work for sub-minimum wages

by forbidding Plaintiff from cashing or depositing his paychecks from January 2019 through November 2019.

144.    Defendants threatened Plaintiff that they would withdraw their sponsorship of Plaintiff's immigration visa if Plaintiff cashed or deposited his checks for his work from January 2019 through November 2019.

145.    Defendants threatened Plaintiff with immediate termination if Plaintiff cashed or deposited his checks for his work from January 2019 through November 2019.

146.    Defendants further threatened Plaintiff with immediate termination, and revocation of their sponsorship of Plaintiff's immigration visa unless Plaintiff ultimately surrendered the paychecks he was given, but instructed to not deposit, from January 2019 through November 2019.

WHEREFORE, Plaintiff, OZGAR OZKAN, respectfully requests that this Honorable Court enter judgment in his favor and against Defendants, KANTI GROUP, INC., and RAJIV PANDEY, and award Plaintiff: (a) all damages for violations of the TVPRA, including but not limited to, compensatory and punitive damages, to be paid by Defendants, jointly and severally; (b) reasonable attorneys' fees and litigation costs to be paid by Defendants, jointly and severally; and any and all such further relief as this Court deems just, equitable, and proper under the circumstances.

## COUNT VIII – FLSA RETALIATION
### (Against KANTI & PANDEY)

147.    Plaintiff hereby re-alleges and re-avers Paragraphs 1 through 89 as though set forth fully herein.

148.    In June 2020, Plaintiff approached Defendant, PANDEY, and requested that he be paid for the all of the overtime hours he worked throughout 2019.

149.    In direct response to this invocation of Plaintiff's federal right to overtime compensation, Defendants, KANTI, and PANDEY, terminated Plaintiff's employment and requested that Plaintiff's work visa be revoked immediately.

150.    Any other justification for Plaintiff's termination is pretextual.

151.    Any other justification for the revocation of Plaintiff's work visa is pretextual.

152.    Plaintiff has suffered damages as a result of Defendants' actions in an amount to be proven at trial.

153.    Following his unlawful termination Plaintiff has made efforts to mitigate his damages.

154.    As a result of the conduct alleged herein, Plaintiff was required to retain the services of the undersigned law firm and is entitled to recover reasonable attorney's fees and costs.

WHEREFORE, Plaintiff, OZGAR OZKAN, respectfully requests that this Honorable Court enter judgment in his favor and against Defendants, KANTI GROUP, INC., and RAJIV PANDEY, and award Plaintiff: (a) all economic and compensatory damages under the FLSA, to be paid by Defendants, jointly and severally; (b) liquidated damages to be paid by Defendants, jointly and severally; (c) reasonable attorneys' fees and litigation costs to be paid by Defendants, jointly and severally; and any and all such further relief as this Court deems just, equitable, and proper under the circumstances.

## **DEMAND FOR JURY TRIAL**

Plaintiff, OZGUR OZKAN, hereby requests and demands a trial by jury on all appropriate claims.

**Dated: April 21, 2022**

Respectfully Submitted,

**USA EMPLOYMENT LAWYERS-
JORDAN RICHARDS, PLLC**
1800 SE 10th Ave. Suite 205
Fort Lauderdale, Florida 33316
Ph: (954) 871-0050
*Counsel for Plaintiff*

By: */s/ Jordan Richards*
JORDAN RICHARDS, ESQUIRE
Florida Bar No. 108372
JAKE BLUMSTEIN, ESQUIRE
Florida Bar No. 1017746
DAVID M. NUDEL, ESQUIRE
Florida Bar No. 1003678
*Jordan@jordanrichardspllc.com*
*Jake@jordanrichardspllc.com*
*David@usaemploymentlawyers.com*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the foregoing document was filed via CM/ECF on April 21, 2022.

By: */s/ Jordan Richards*
JORDAN RICHARDS, ESQUIRE
Florida Bar No. 108372

## SERVICE LIST: